## JOSEPH L. HAMBLETT & wife *vs* ZEPHANIAH BENNETT.

A deed of land to an organized and acting, though unincorporated, religious society, vests a valid title in the grantees as a body, and does not create a tenancy in common among the individuals who compose the society.

A vote by such society, which has received a grant of land and built a church thereon, that a committee "have charge of the church and basement, and see that the whole be kept in repair," authorizes the committee, or one of them who acts for the whole, to take possession thereof, lock up the same, and remove any person therefrom who has not a superior right.

Neither an unincorporated association formed by members of a religious society for charitable and religious purposes, and by its constitution made auxiliary to the society, nor its members, acquire any permanent rights in or become tenants at will of the basement of the church, by reason of having contributed to the expense of fitting it up, under a general agreement, not expressed in any vote or other formal manner, that they might use it for their meetings, and for fairs and parties.

TORT to recover damages for an assault and battery upon the female plaintiff, and for breaking and entering the plaintiffs' close, to wit, the hall in the basement of the Universalist church in Tyngsborough, and expelling the female plaintiff therefrom. The answer denied the assault, and alleged that whatever acts were done by the defendant were done by him in a proper manner and without undue force, as agent of the Proprietors of the

First Universalist Meeting-house in Tyngsborough, to whom the premises belonged.

At the trial in the superior court, before *Vose*, J., there was evidence tending to show that in May 1841 ten persons in Tyngsborough, who had been in the habit of subscribing to pay for hiring a Universalist preacher, applied to a justice of the peace for a warrant to call a meeting in order to form an incorporated religious society, and, at the meeting held in the same month in pursuance of the warrant issued upon said application, officers were chosen, and the society adopted the name of " the Proprietors of the First Universalist Meeting-house in Tyngsborough." The records were made a part of the case. A committee to purchase a site for the meeting-house, and a building committee, were also chosen. On the 19th of August 1841 Charles Butterfield executed a deed of land to " the society called the Proprietors of the First Universalist Meeting-house in Tyngsborough," and a meeting-house was soon after erected thereon, by subscription for fifty-three shares of twenty-five dol-.ars each ; and meetings of the society have continued to be held and the organization maintained to the present time. At the first meeting, by-laws were adopted, one of which was as follows : " Any person may become a member of the society by taking one or more shares in the meeting-house and subscribing the by-laws."

In 1848 the ladies who attended the meetings of this society formed an association called " The Ladies' Murray Circle," for charitable and religious purposes, the records of which were made a part of the case, and are sufficiently referred to in the opinion ; and there was evidence tending to show that prior to 1857 this association became owners of two shares in the meeting-house. The basement of the meeting-house remaining unfinished, it was voted, at a meeting of the society held in September 1857, to finish it by subscription, and that the standing committee, of whom the defendant was one, be authorized to superintend the same ; and the defendant informed the female plaintiff that the proprietors had agreed that the ladies might finish the basement and hold meetings there, if they would

furnish the money, which information was communicated to the ladies, who accordingly furnished the money to the committee. There was further evidence " that the talk among the proprietors was, that the ladies were to fit up the hall and have the use of it for fairs and social parties; and that it was not talked of that they were to have the control of the basement to the exclusion of the society."

It appeared by the records that at a meeting of the society in 1861 it was voted that the committee have charge of the church and basement, and see that the whole be kept in repair. The committee, of whom the defendant was one, gave the female plaintiff, who was president of the Ladies' Murray Circle, written notice to quit the basement; and, more than two weeks afterwards, the defendant with another of the committee went to the basement to take control of it and fasten it up, and had entered it, and were putting a new lock on the door, when the female plaintiff came there and protested against their proceedings, and the defendant requested her to leave the premises, which she refused to do, and interfered with the shutting up of the room, and the injury complained of resulted from the attempt of the defendant to remove her therefrom.

The judge, among other instructions not excepted to, instructed the jury " that the legal proceedings in 1841 did not create and establish a legally incorporated religious society, but that the original subscribers and those who afterwards united with them for the purpose of maintaining religious worship continued to be a voluntary unincorporated association; that the effect of the deed of Butterfield was to vest in the original subscribers, and their heirs and grantees, the legal estate in the land and building; that if the association, at first consisting of the original subscribers or proprietors, subsequently enlarged their membership, and admitted persons to their association not original proprietors, and not claiming under any of the original proprietors, and the association, thus enlarged and changed, continued in the possession and use of the church ground and building by the assent of the proprietors, such association used and occupied it as tenants at will under the legal owners of the property;

Hamblett & wife *v.* Bennett.

that it was not necessary, in order to create the relation of ten
ants at will, as to this basement, between the religious society and
the Murray Circle and its members, that any formal grant or
lease should be proved; that it was competent for the jury to
presume such a tenancy, if the evidence satisfied them that the
Circle was in the exclusive use and possession of the basement
with the assent of the religious society ; that, if they found that
such a tenancy existed, it could only be terminated by three
months' notice in writing from the society to the Circle, and that
the defendant, acting in behalf of the society, could not lawfully
eject by force any member of the Circle from the basement,
claiming a right to be there as a member of the Circle, until
such notice had been given ; that it was a fact to be determined
by the jury, upon the evidence, whether the Circle had ever paid
to the society the price of two shares in said house for the pur-
pose of acquiring the rights of membership in the society ; that
the effect of such payment, if made, would not be to make the
Circle the owners of any part of the legal estate in the land and
building, in the absence of any conveyance from the original
proprietors, but simply to make the members of the Circle ten-
ants in common with the members of the society in the use and
enjoyment of the building ; and that if the evidence satisfied
them that such a tenancy was created by the fact of payment
by the Circle for two shares in the meeting-house, the defendant,
acting as one of and in behalf of other tenants in common,
could not lawfully expel by force the female plaintiff from the
premises so held in common."

The jury returned a verdict for the plaintiffs, and the defend-
ant alleged exceptions.

*D. S. Richardson & T. Wentworth*, for the defendant.

*T. H. Sweetser*, (*W. S. Gardner* with him,) for the plaintiffs.

HOAR, J, It will not be necessary to consider at length all
the questions which have been or might be raised in this case,
because a few considerations seem to be decisive of it. The
action is tort for an assault and battery, and for breaking and
entering the plaintiffs' close, to wit, the hall in the basement of
the Universalist church in Tyngsborough; and the case turns

upon the right of possession of that hall at the time of the alleged tort.

The land was conveyed by its former owner, by a deed dated August 19, 1841, to " the society called the Proprietors of the First Universalist Meeting-house in Tyngsborough." Whether this society had become an incorporated religious society under the statute at the time of the grant is immaterial, because it clearly appears from the records which come up with the bill of exceptions that it was then at least an organized religious society, acting in a parochial capacity; and, if unincorporated, it had the power to receive the grant, and to manage and use the estate granted, being made by the statute a corporation to that extent and for that purpose. Rev. Sts. *c.* 20, § 25. Gen. Sts. *c.* 30, § 24. *St.* 1811, *c.* 6. *Oakes* v. *Hill*, 10 Pick. 344. The deed of Butterfield, therefore, vested the title to the land in the society, and no tenancy in common was created among the individual members.

In the next place, we think the vote of the society, directing their committee, of whom the defendant was one, to " have charge of the church and basement, and see that the whole be kept in repair," was a sufficient authority to the defendant, acting on behalf of the committee, to take possession of the meeting-house, and do whatever in his judgment was necessary for its security; and that it afforded a complete justification for his locking up the basement, and removing in a proper manner any person who undertook to obstruct him in the exercise of his duty, unless the society had previously created some estate in the premises which gave a right superior to that of the defendant.

The instructions given to the jury not having been in conformity with these views of the law, the verdict must be set aside. But if a new trial should be had, it may be important to consider the claim of the plaintiffs to an estate in the premises as tenants at will. The Murray Circle, under which the claim is asserted, is an association of the ladies of the religious society, formed for charitable and religious purposes, and by its constitution made auxiliary to the society. There was evidence

that it purchased and owned two shares in the society, and contributed largely to the expense of fitting up the hall in the basement of the church, under an agreement that it should have the use of the hall for its meetings, and for fairs and parties. But it was shown that the hall was also used by the society for other purposes, and was let from time to time to other persons, yielding an income to the society's funds. The Circle was not a corporate body, capable in its collective capacity of taking any estate in land. And though a grant to the Circle might under some circumstances be construed as a grant to the individual members of which it was composed, yet there seems to us nothing in the evidence reported which would authorize a jury to infer that such a grant was made. No vote of the religious society is found, to give any distinct statement of the intention of the parties. The Circle was a changeable and fluctuating body. The use it was to make of the hall was not general and exclusive, but limited to its own special objects. The understanding and agreement do not appear to have gone farther than the license and consent usually given to a Sunday school, or choir, or church, connected with a parish or religious society, to occupy some room in the meeting-house for the objects of its particular department. In such a case, the purpose to create a tenancy at will, or tenancy in common, would be extraordinary and improbable. The relation of the parties and all the circumstances indicate rather a license, revocable at the pleasure of the society who retain the general control of the building.

*Exceptions sustained.*